

FILED

Dec 09 2016, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Gary W. Lowrance
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian Alexander Thomas McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary W. Lowrance, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 9, 2016 <br><br> Court of Appeals Case No. <br> 82A01-1601-CR-61 <br><br> Appeal from the Vanderburgh <br> Circuit Court <br><br> The Honorable David D. Kiely, <br> Judge <br><br> Trial Court Cause No. <br> 82C01-8908-CF-7576 |

**Pyle, Judge.**

## Statement of the Case

[1]   Gary Lowrance ("Lowrance") appeals pro se the trial court's denial of his motion to correct error regarding the denial of his motion for a nunc pro tunc order. According to Lowrance, the trial court should have granted both

motions because the trial court's statement at Lowrance's 1996 sentencing hearing constituted an order to reinstate his right to bear arms. Finding that the trial court's statement at the 1996 sentencing hearing merely set forth the terms and conditions of Lowrance's probation, we affirm the trial court's denial of Lowrance's motion to correct error.

[2] We affirm.

# Issue

Whether the trial court abused its discretion in denying Lowrance's motion to correct error.

# Facts

[3] The facts as set forth in Lowrance's direct appeal reveal that:

[E]arly in the morning of August 5, 1989, [Lowrance] was informed that his wife, Leslie Lowrance, was having an affair with his best friend, Steven Patterson. Patterson informed [Lowrance] that he and Leslie intended to take [Lowrance's] son to Kentucky where Patterson would raise him as his own son.

That night – after a day filled with chaotic events – all four of the above mentioned persons were present in [Lowrance's] apartment. [Lowrance] asked Leslie to come upstairs to kiss their son goodnight. As Leslie leaned over to kiss her son, [Lowrance] struck her, knocking her to the floor. Patterson heard the commotion and ran to Leslie's aid. [Lowrance] brandished a handgun. Patterson begged [Lowrance] not to shoot him. [Lowrance] stated "I'm going to kill you, you mother f_____," and shot Patterson in the head numerous times. [Lowrance] then turned the gun on Leslie and shot her twice in

the head. [Lowrance] ordered Leslie to sit still and watch Patterson bleed. [Lowrance] then proceeded to beat Leslie brutally about the jaw and face. When [Lowrance's] and Leslie's son began to cry, [Lowrance] explained they were playing a game and asked him if he would like to help.

Patterson almost died from his wounds. He suffered permanent brain damage and faces the prospect of an operation to remove a bullet lodged in his spine from which he may not survive. The two bullets fired into Leslie's head ricocheted off. One carried away hair and became imbedded in the wall. As a result of the beating, Leslie suffered loosened teeth, a cut lip, a swollen jaw, a black eye, and a knot the size of a baseball on her face.

*Lowrance v. State*, 565 N.E.2d 375, 376-77 (Ind. Ct. App. 1991).

[4] A jury convicted Lowrance of two counts of attempted murder. The trial court sentenced him to concurrent thirty-year sentences. This Court affirmed the convictions and sentences on direct appeal. *Id.* at 376.

[5] In December 1994, Lowrance filed a petition for post-conviction relief, which the post-conviction court granted. Lowrance was retried and convicted of Class C felony battery and attempted voluntary manslaughter. On September 20, 1996, the trial court sentenced Lowrance to an aggregate sentence of thirty years with ten years suspended to probation. Regarding the terms and conditions of Lowrance's probation, the trial court stated as follows:

At the conclusion[] of your executed sentence I'm placing you on, suspending the ten years and placing you on probation and subject to the following terms, one, and probably the most important, is that you shall have no communication . . . with the victims . . . . [T]hat you are to obey all the laws of the State of

Indiana . . . . I'm going to make this a non-reporting type of probation with an exception, I want you to keep the [probation department] informed at all times as to your address . . . . There are other conditions that we normally impose[], some of them I'm not going to apply. . . . I assume you will work at suitable employment and meet your family responsibilities. You are not to unlawfully use, possess, sell or dispense any drug identified as [a] controlled substance. . . . *I'm not going to order that you not possess a firearm, although there was a deadly weapon involved here, there's evidence that you did like to do hunting and I don't see why you should be prevented from doing that*, certainly you are not to illegally possess guns and that again if you did would be a violation of the State of Indiana which would be a violation of your probation. I'm going to ask that you, make it a condition that you continue with your counseling . . . .

(Tr. 8-10) (emphasis added).[1] Lowrance did not appeal his convictions or sentence.

[6] Lowrance was released from prison to probation in June 1999. Ten years later, in June 2009, he successfully completed probation. In 2014, Lowrance attempted to legally purchase a shot gun; however, his application was denied

---

[1] Today's reader will likely be surprised by the trial court's exclusion of a provision prohibiting firearms under its probation order. Putting aside the horrific facts of this case, there was a narrow exception under the law that would have allowed Lowrance to legally possess a firearm. In 1996, INDIANA CODE § 35-47-4-4 permitted a convicted felon to own, carry, or possess a firearm as long as he or she was in their dwelling, on their property, or inside their fixed place of business. Federal law prohibited a convicted felon from possessing or receiving a firearm only "in or affecting interstate commerce." 18 U.S.C. §922(g) (1996). However, in 1999, our General Assembly enacted what is currently known as Indiana's serious violent felon statute. IND. CODE § 35-47-4-5. Under the current statute, a person convicted of a qualifying felony, like attempted voluntary manslaughter, is prohibited from knowingly or intentionally possessing a firearm, anywhere.

following a national background check, which revealed his attempted murder convictions.

[7] In December 2014, Lowrance filed a "Motion for Nunc Pro Tunc Docket Entries to Accurately Reflect the Actions Take[n] by the Court in this Case," wherein he asked the trial court to enter the following nunc pro tunc entries in the docket:

> 2. September 20, 1996, Docket Entry should include "defendant is not prohibited from possessing firearms, defendant may legally possess firearms."

> 3. September 24, 1996, IDC Abstract or Abstract of Judgment should be entered reflecting convictions for less[e]r included charges of "Battery-Class C and Attempted Voluntary Manslaughter-Class A."

[8] (App. 13). The motion specifically alleged that the trial court's statement at Lowrance's 1996 sentencing hearing constituted an order "returning . . . Lowrance's right to bear arms legally." (App. 13). He asked the trial court to direct the clerk or her staff to provide notice to "all appropriate State and Federal databases" that his "right to bear arms [was] legally reinstated on September 20, 1996." (App. 14).

[9] The trial court held a hearing on the petition in March 2015 and, issued an amended abstract of judgment that reflected the 1996 battery and attempted voluntary manslaughter convictions in April 2015. The abstract of judgment

did not address Lowrance's argument that the trial court had issued an order reinstating his right to bear arms in 1996.

[10] In September 2015, Lowrance filed an "Agreed Motion for Nunc Pro Tunc Docket Entry to Accurately Reflect the Actions Taken by the Court in this Cause," wherein he sought a determination that the trial court had reinstated his right to bear arms on September 20, 1996. He also asked that the trial court's 1996 statement be entered on the "docket to correct the omissions in the September 20, 1996 entry." (App. 764). Two months later, in November 2015, the trial court denied Lowrance's motion. Lowrance filed a motion to correct error, which the trial court also denied. Lowrance now appeals the denial of his motion to correct error.

## Decision

[11] At the outset, we note that Lowrance has chosen to proceed pro se. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Twin Lakes Reg'l Sewer Dist. v. Teumer*, 992 N.E.2d 744, 747 (Ind. Ct. App. 2013). This means that pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). We will not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n. 1 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*.

[12] Here, Lowrance appeals the denial of his motion to correct error pursuant to Indiana Trial Rule 59 regarding the trial court's denial of his motion for a nunc pro tunc order. Our standard of review in such cases is well-established. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Old Utica School Preservation, Inc. v. Utica Tp.*, 7 N.E.3d 327, 330 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it or the reasonable inferences therefrom. *Id.*

[13] As for our standard of review for nunc pro tunc orders, we have explained as follows:

> A nunc pro tunc order is an entry made now of something which was actually previously done to have effect as of the former date. *Brimhall v. Brewster*, 835 N.E.2d 593, 597 (Ind. Ct. App. 2005) (citing *Cotton v. State,* 658 N.E.2d 898, 900 (Ind. 1995)). A nunc pro tunc entry may be used to record an act or event nor recorded in the court's order book or to change or supplement an entry already recorded in the order book. *Brimhall*, 835 N.E.2d at 597. The purpose of a nunc pro tunc order is to correct an omission in the record of action really had but omitted through inadvertence or mistake. *Id.* But the record must establish that the unrecorded act or event actually occurred. *Id.* A written memorial must form the basis for established the error or omission to be corrected by a nunc pro tunc entry. *Id.*

*Grayson v. Union Fed. Savings & Loan Ass'n of Crawfordsville*, 851 N.E.2d 1017, 1020 (Ind. Ct. App. 2006), *trans. denied*.

[14] Lowrance argues that the trial court erred in denying his motion for a nunc pro tunc order. He specifically contends that the trial court's statement at the 1996 sentencing hearing that it was "not going to order that [Lowrance] not possess a firearm" was, in essence, an order reinstating Lowrance's right to bear arms. (Tr. 10). However, our review of the record reveals that the trial court's statement at the sentencing hearing did nothing more than set forth the terms and conditions of Lowrance's probation. The trial court was not reinstating Lowrance's right to bear arms. Accordingly, when Lowrance's probation ended in 2009, so did the applicability of the trial court's 1996 sentencing statement.

[15] Because the trial court's sentencing statement did not constitute an order reinstating Lowrance's substantive right to bear arms, there was no "omission in the record of action really had." *See Grayson*, 851 N.E.2d at 1020. Without such an omission, there was nothing for the trial court to correct with a nunc pro tunc entry. The trial court did not abuse its discretion in denying the motions for nunc pro tunc order and to correct error.[2]

[16] Affirmed.

Kirsch, J., and Riley, J., concur.

---

[2] Lowrance raises several other issues which flow from his argument that the trial court's 1996 sentencing statement was an order reinstating Lowrance's right to bear arms. Because we have concluded that this statement did not constitute such an order, we need not address these issues.