## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 26 2017, 6:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Michael E. Deferbrache
Indiana State Prison
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael E. Deferbrache, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | April 26, 2017 <br><br> Court of Appeals Case No. 20A03-1606-PC-1429 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Trial Court Cause No. 20C01-0606-PC-15 |

**Crone, Judge.**

## Case Summary

Michael E. Deferbrache appeals the denial of his petition for postconviction relief ("PCR"). He asserts that the postconviction court clearly erred in determining that he was not denied his constitutional right to effective assistance of counsel at both the trial court and the appellate level. He also challenges the postconviction court's denial of his freestanding claims. We affirm.

## Facts and Procedural History[1]

In July 2003, the Goshen Police Drug Unit arrested a person ("Witness 2") who was found in possession of one pound of methamphetamine ("meth"), which he said that he had bought that day from Deferbrache at Deferbrache's trailer in Elkhart. Also that day, Elkhart Police Department officers spoke to another person ("Witness 3") who claimed to have been inside Deferbrache's trailer, seen firearms, and observed Witness 2 buying meth from Deferbrache. The Elkhart County prosecutor had previously received a telephone call from another individual ("Witness 1") claiming that a relative living with Deferbrache's mother in a house on the same property had witnessed Deferbrache's sale of meth from his trailer and a high level of traffic entering

---

[1] Ordinarily, in a PCR case involving a previous direct appeal, we include the facts as stated by this Court on direct appeal. However, Deferbrache has not provided us with a copy of the 2004 unpublished decision on his direct appeal. As such, we are forced to cobble together the underlying facts from various sources such as the probable cause affidavit, charging information, chronological case summary, postconviction court findings, various transcripts, and the parties' briefs.

and exiting the trailer. Acting on the information provided by the three witnesses, police sought and obtained a search warrant for the trailer.

[3] During the execution of the warrant, officers observed white powder that appeared to be meth and smelled a strong odor of ether. Deferbrache was Mirandized and, having waived his rights, admitted to police that he manufactured meth inside his trailer and cultivated marijuana outside near the property's border.

[4] Police obtained a second search warrant for the trailer and house. The search produced more than three grams of vacuum-sealed meth (finished product), over ten grams of ground ephedrine, numerous prescription/legend drugs for which there were no valid prescriptions, a vacuum sealer, baggies, several cans of starter fluid, scales, drug paraphernalia, marijuana plants, salt, coffee filters, ephedrine in the process of being converted into meth, containers of acid and other chemicals commonly used to manufacture meth, cash, several firearms, ammunition, a stun gun, a bulletproof vest, night-vision goggles, and a scanner. Appellant's App. Vol. 3 at 128-29.

[5] The State charged Deferbrache with class A felony possession of over three grams of methamphetamine with intent to deliver, class A felony methamphetamine manufacturing (over three grams), and class D felony cultivation of marijuana (over thirty grams), with a sentencing enhancement charge for possession of a sawed-off shotgun in a controlled substance offense.

At all stages of the proceedings in the trial court and on direct appeal, Deferbrache was represented by the same attorney ("Counsel").

[6] Deferbrache filed a motion to suppress the evidence obtained during the searches of his property, claiming that the initial search warrant was not supported by probable cause. During the suppression hearing, the State introduced both search warrants with accompanying affidavits, and the trial court heard testimony from Officer Jim Buchmann concerning the investigation that led to the issuance of the first warrant. After taking the matter under advisement, the trial court denied Deferbrache's motion to suppress. While he was released on bond, Deferbrache was arrested and charged in a new cause with a class A felony drug offense.

[7] A few days before the scheduled trial date, Deferbrache pled guilty as charged without the benefit of a plea agreement. However, the State agreed to reduce the class A felony charge in his new cause to a class B felony. The trial court sentenced him to concurrent thirty-year terms for the class A felonies, a ten-year enhancement on the manufacturing count, a concurrent one and a half years for the class D felony, with a ten-year enhancement for the sawed-off shotgun charge, a fifty-year aggregate term. Deferbrache appealed his sentence, which was affirmed by another panel of this Court in a memorandum decision. *Deferbrache v. State*, No. 20A03-0503-CR-91 (Ind. Ct. App. Nov. 18, 2004).

[8] In 2008, Deferbrache, acting with the assistance of two different public defenders, filed a PCR petition, which he subsequently withdrew without

prejudice. In the intervening years, he filed three petitions for sentence modification, all of which the trial court denied. Eight years after he withdrew his initial PCR petition, he filed the instant pro se PCR petition. Again, two different public defenders were appointed to assist him, but eventually, the public defender's office filed a notice of nonrepresentation and was removed as counsel of record. Thereafter, Deferbrache filed a motion for the appointment of independent counsel, which the postconviction court denied on jurisdictional grounds.

[9] During the PCR hearing, Deferbrache elicited testimony from two subpoenaed witnesses: Counsel and Deferbrache's mother. The State moved to strike three of the allegations in Deferbrache's PCR petition.[2] After the hearing, the postconviction court ordered the parties to file proposed findings. In an order with findings of fact and conclusions of law, the postconviction court granted the State's motion to strike the three allegations and denied the PCR petition on all remaining grounds, which included allegations of ineffective assistance of trial and appellate counsel and a freestanding claim of insufficient factual basis to support his guilty plea to the sawed-off shotgun enhancement count.

[10] Deferbrache, pro se, now appeals the denial of his PCR petition. Additional facts will be provided as necessary.

---

[2] The postconviction court granted the State's motion to strike the following allegations in Deferbrache's PCR petition: (1) complete denial of his right to counsel under *U.S. v. Cronic*, 466 U.S. 648 (1984); (2) newly discovered evidence; and (3) prosecutorial misconduct. Appellant's App. Vol. 2 at 63-64.

# Discussion and Decision

[11]  Deferbrache contends that the postconviction court erred in denying his PCR petition. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-conviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Post-conviction Rule 1(6). A petitioner who appeals the denial of his postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013), *trans. denied* (2014). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253.

[12]  Postconviction relief does not offer the petitioner a super appeal; rather, subsequent collateral challenges must be based on grounds enumerated in the postconviction rules. *McKnight*, 1 N.E.3d at 199. These rules limit the scope of

relief to issues unknown or unavailable to the petitioner on direct appeal. *Id.* Where, as here, the judge who presided over the defendant's trial is also the judge who presided over his postconviction proceedings, the postconviction court's findings and judgment should be entitled to "greater than usual deference." *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014).

[13] At the outset, we note that Deferbrache chose to proceed pro se, both in the PCR proceedings below and in this appeal. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016). This means that they must follow our established rules of procedure and accept the consequences when they fail to do so. *Id.* It is not the court's role to become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.*

[14] Here, the transcript of the PCR hearing reflects an incoherent presentation of evidence, due largely to Deferbrache's lack of preparation and inability to articulate issues and question witnesses in a way that conforms to the Indiana Rules of Trial Procedure. While exercising patience and restraint, the postconviction court repeatedly had to correct Deferbrache and to explain that the court could not act as his legal counsel as to how to conduct an examination. *See, e.g.*, PCR Tr. at 20-21, 33, 37 (postconviction court to Deferbrache: "I can't be your lawyer. I can't guide you in what you're supposed to do …. I can't tell you what questions to ask."; "You got a multi-

faceted question there. Just one part at a time. Try it again."; "What are you talking about? I have no idea what you mean.") Additionally, the postconviction court explained that much of what Deferbrache was attempting to do amounted to relitigating sentencing issues that had been resolved on direct appeal. Though it is obvious from the transcript that Deferbrache brought a copy of this Court's unpublished decision to the hearing, he has failed to include a copy in the record on appeal. As such, we are left to piece together arguments seemingly made on direct appeal and to sift through those that are not available to defendants who have entered a guilty plea.

## Section 1 – Deferbrache was not denied his constitutional right to effective assistance of trial counsel.

[15] Deferbrache maintains that he was denied his constitutional right to effective assistance of trial counsel. To prevail on an ineffective assistance claim, Deferbrache must satisfy two components: he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a

whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley*, 999 N.E.2d at 983. Where, as here, the defendant has entered a guilty plea, he is entitled to relief only if he proves that (1) he would not have pled guilty absent the ineffective assistance of counsel; and (2) there is a reasonable probability that he would have received a more favorable result in a competently run trial. *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001).

[16]   Deferbrache claims that Counsel was ineffective at the trial court level in (1) failing to file an interlocutory appeal to challenge the denial of his motion to suppress the evidence obtained pursuant to the search warrant; and (2) failing to inform him of a plea offer.[3] With respect to the latter, the record indicates that the State did not make a plea offer. Deferbrache chose not to testify at his PCR hearing, and Counsel testified that "there wasn't an offer." PCR Tr. at 49. Counsel went on explain,

---

[3] Deferbrache raises other allegations of deficient performance at the trial court level. However, the postconviction court correctly found that several of the allegations do not apply where the defendant forgoes a trial and instead pleads guilty, i.e., failure to discover exculpatory evidence, conduct professional interviews of witnesses and to subpoena defense witnesses, and failure to investigate the crime scene, challenge the probable cause affidavit, or assert his actual innocence. Appellant's App. Vol. 2 at 64. To the extent that he also raises issues pertaining to Counsel's alleged lack of vigor in arguing for a more lenient sentence, we note that another panel of this Court has already considered and affirmed the appropriateness of his sentence. He has failed to establish prejudice.

> [A]t the time, I knew that there wasn't even a plea offer. And, in
> fact, had there been a plea offer I believe you might have had
> some of the charges dropped or some of the counts dropped. But
> what [the prosecutor] had said at the time was you could plead
> guilty to all the counts, which is what happened.

*Id*. at 50.

[17]     Simply put, Counsel did not perform deficiently in failing to convey to
Deferbrache a nonexistent plea offer. Thus, the postconviction court properly
found Deferbrache's argument to be "without merit." Appellant's App. Vol. 2
at 65.

[18]     Moreover, we find neither deficient performance nor prejudice in Counsel's
failure to seek an interlocutory appeal of the denial of Deferbrache's motion to
suppress. The postconviction court found as follows with respect to Counsel's
performance during all proceedings at the trial court level:[4]

> Counsel stated that, in the course of his routine business practice,
> he reviews discovery to identify strengths and weaknesses, issues
> and defenses. He also said that he does not advise his clients
> whether or not to accept pleas, that it is the client's decision
> alone. Counsel testified that in the instant case, he researched
> issues relating to suppression, double jeopardy, and then existing
> case law concerning manufacturing methamphetamine and
> finished product. Counsel filed and argued a motion to suppress
> evidence. He said these efforts were somewhat hindered by the
> fact that Deferbrache picked up new criminal charges while on

---

[4] To the extent that the postconviction court used different designations for Deferbrache and Counsel, we
use the designations consistent with the remainder of this decision.

bond awaiting trial. In spite of that, in exchange for the guilty plea, Counsel said he was able to get the State to reduce the Class A felony in the new case to a Class B felony, thereby saving Deferbrache from exposure to thirty (30) additional years of incarceration that could have been consecutive had Deferbrache gone to trial and lost on a second Class A felony.

….

[T]he evidence and testimony presented established that Counsel reviewed discovery, filed a motion to suppress, and clearly advocated Deferbrache's interests. Counsel is not ineffective simply because he does not take every action the client thinks he should.

Appellant's App. Vol. 2 at 65-66.

[19] Counsel represented Deferbrache at the suppression hearing, arguing that the initial search warrant was not supported by probable cause. He was afforded the opportunity to examine Officer Buchmann concerning the underlying evidence that led to the warrant's issuance. Three separate and unconnected witnesses implicated Deferbrache in the manufacture of meth. Although Deferbrache correctly observes that Witness 1 and Witness 2 were subject to criminal charges that might have affected their decisions to report, Witness 3 was not subject to criminal charges and was simply acting as a concerned citizen. In short, the motion to suppress was denied not because of poor performance by Counsel but because the witnesses' affidavits supported the issuance of the warrant. Deferbrache therefore has failed to demonstrate

ineffective assistance of counsel in Counsel's failure to file an interlocutory appeal of the denial of his motion to suppress.

## Section 2 – Deferbrache was not denied his constitutional right to effective assistance of appellate counsel.

[20] Deferbrache also contends that he received ineffective assistance of counsel on direct appeal. The standard of review for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel in that the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Strickland*, 466 U.S. at 686; *Bieghler v. State*, 690 N.E.2d 188, 192-93 (Ind. 1997), *cert. denied* (1998). Ineffective assistance of appellate counsel claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006).

[21] "Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Manzano v. State*, 12 N.E.3d 321, 330 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied* (2015). In evaluating the performance prong when appellate counsel has failed to raise an issue and waiver results, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001). "If the analysis under this test demonstrates deficient

performance, then we examine whether the issues which ... appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Manzano*, 12 N.E.3d at 329-30.

As best we can discern, Deferbrache's claim against appellate Counsel concerns Counsel's failure to raise the issue of double jeopardy on direct appeal. We reiterate that Deferbrache has failed to provide a copy of this Court's unpublished decision in his direct appeal, but based on record before us, we are relatively certain that the issues raised in his direct appeal were properly limited to sentencing issues such as the trial court's application of aggravators and mitigators and appropriateness of his sentence. *See Alvey v. State*, 911 N.E.2d 1248, 1249 (Ind. 2009) (defendant who enters an open guilty plea cannot challenge his conviction on appeal but instead is limited to challenging his sentence).

Deferbrache asserts that appellate Counsel performed deficiently in failing to raise an obvious issue: double jeopardy. He relies on *Caron v. State*, 824 N.E.2d 745 (Ind. Ct. App. 2005), *trans. denied*, for the proposition that under Indiana's actual evidence test, his convictions for both possession of meth with intent to deliver and manufacturing meth violate his protection against double jeopardy. Under the actual evidence test, a defendant "must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). The postconviction court acknowledged

Deferbrache's reliance on *Caron*, but found it to be fact-specific, citing *c.f.*, *Storey v. State*, 875 N.E.2d 243 (Ind. Ct. App. 2007) (companion case finding no double jeopardy violation).[5] The court went on to find:

> Irregardless, the Court does not need to speculate what the outcome in the instant case would have been [whether following *Caron* or *Storey*] because Deferbrache waived his right to challenge his convictions by pleading guilty. Deferbrache received a substantial benefit for that plea, including a reduction in his new charge to a Class B felony. When a defendant pleads guilty and receives a benefit, he waives the right to challenge the conviction under double jeopardy. *Mapp v. State*, 770 N.E.2d 332, 334-35 (Ind. 2002). Accordingly, it makes no difference that Counsel did not raise double jeopardy on direct appeal because there is no reasonable probability of a different outcome. Deferbrache has failed to prove that Counsel provided ineffective assistance of appellate counsel.

Appellant's App. Vol. 2 at 68.

[24] Given the procedural framework of this case – involving a guilty plea rather than a jury trial – and given the large quantity of meth, ephedrine, and other evidence underpinning Deferbrache's separate class A felony convictions for the distinct conduct of (1) possessing with intent to deal meth and (2) manufacturing meth, the actual evidence test simply was not implicated. As such, Counsel was not ineffective in failing to raise double jeopardy as an issue on direct appeal.

---

[5] Unlike the present case, both *Caron* and *Storey* involved jury trials, thus implicating the reasonable possibility that the jury relied on the same evidentiary facts to establish both offenses.

## Section 3 – Deferbrache has waived or otherwise failed to establish clear error on his freestanding claims.

[25] Deferbrache also asks that we review his freestanding claims of error. First, with respect to his claim that he was denied his proper jailtime credit, he failed to raise it below and therefore has waived it for consideration on appeal. *See Bieghler*, 690 N.E.2d at 201 (PCR petitioner may not raise argument for first time on appeal of denial of his petition for PCR).

[26] Deferbrache's only remaining freestanding claim is that the postconviction court clearly erred in finding a sufficient factual basis to support his plea of guilty to using a firearm in a controlled substance offense.[6] A trial court may not accept a guilty plea unless it determines that a sufficient factual basis exists to support the plea. *Graham v. State*, 941 N.E.2d 1091, 1098 (Ind. Ct. App. 2011). The standard for demonstrating a sufficient factual basis to support a guilty plea is less rigorous than that which is required to support a conviction. *Id*. A factual basis may be established by relatively minimal evidence concerning the elements of the crime from which the trial court can reasonably conclude that the defendant is guilty. *Id*. A trial court's finding of factual basis to support a guilty plea is presumptively correct. *Id*.

[27] Here, Deferbrache's challenge concerns the sufficiency of the factual basis to support the sawed-off shotgun enhancement. Indiana Code Section 35-50-2-

---

[6] The postconviction court found this claim to be barred by res judicata, based on its resolution on direct appeal. As stated above, Deferbrache did not provide us with a copy of the unpublished decision.

13(a)(2) provides that the State may seek an additional fixed term for a defendant who allegedly committed a controlled substance offense if it can be shown beyond a reasonable doubt that while committing the offense the defendant possessed a handgun, sawed-off shotgun, or machine gun, in violation of statute. Where, as here, the case involves the possession of a sawed-off shotgun, the fixed additional term is up to ten years. Ind. Code § 35-50-2-13(c)(1); *see also*, Ind. Code § 35-47-1-10 (2003) (defining sawed-off shotgun as having one or more barrels less than eighteen inches in length and an overall length of less than twenty-six inches).

[28] During his guilty plea hearing, the trial court attempted to establish a factual basis for this enhancement by questioning Deferbrache as follows:

> Q: Are you telling me that on that same day, July 17, 2003, when you committed the [offenses] involving controlled substances, the methamphetamine cases, at that time you knowingly possessed a sawed-off shotgun?
>
> A: Yes, sir.
>
> Q: And that was a 20-gauge shotgun?
>
> A: Yes, sir.
>
> Q: And it had a barrel less than 18 inches.
>
> A: I don't know the particular length, sir; but it's possible, yes.
>
> Q: Was the overall length less [th]an 26 inches?
>
> A: I never measured it, sir. I couldn't tell you.

Q: Approximately how long was it?

A: I couldn't say for sure. I never measured it, like I said, but--

Q: Well, I'm going to have to have some evidence that it was a sawed-off shotgun with a barrel less than 18 inches or an overall length of less than 26 inches. That's what the state says it was. Do you disagree with that?

A: No, sir.

Q: Show me with your hands about how long it was.

(The defendant indicated.)

Q: The overall length was about 18 to 20 inches. Is that correct?

A: Possibly, yes.

Q: Would that be a fair assessment of how far apart your hands are?

A: Yes. I would say it might have been out a little bit more but not--

Q: Maybe 24 inches.

A: Somewhere around there, a couple more inches, yes, sir.

Q: All right. Are you telling me that this sawed[-]off shotgun that you had, this 20 gauge, was less than 26 inches overall?

A: Yes, sir, it's possible.

Q: I need to know more than it's possible.

A:  Yes, sir.

Q:  All right.  Are you telling me you're guilty of possessing this sawed-off shotgun which because of its length is essentially a handgun under the statute?

A:  Excuse me, I'm sorry.

Q:  Are you telling me you're guilty of possession of this handgun which is what a gun with an overall length less than 26 inches or a barrel less than 18 inches, this sawed[-]off shotgun amounts to?

A:  Yes, sir.

Q:  And you're telling me you possessed that at the same time you possessed the methamphetamine?

A:  Yes, sir.

Guilty Plea Tr. at 5-7.

[29]    This interchange shows that Deferbrache knowingly possessed what he deemed to be a sawed-off shotgun.  The only confusion came in his assertions that he had never measured the weapon to ascertain its precise barrel length or overall length.  His attempt to illustrate with his hands the shotgun's overall length placed it at an overall length of around twenty-four inches, within the statutory definition in place at the time.  *See* Ind. Code § 35-47-1-10 (2003).  A photograph of the sawed-off shotgun was introduced during the sentencing hearing.  State's Ex. 5.  The photograph depicts several weapons laid out side by side.  One of those is a weapon appearing to be within the size specifications

set for sawed-off shotguns. While the better practice would have been for the State to introduce the photograph or the shotgun itself during the guilty plea hearing, we are mindful that "determinations of sufficient factual bases need not turn into 'veritable bench trials.'" *Rhoades v. State*, 675 N.E.2d 698, 700 (Ind. 1996). Deferbrache knowingly possessed a sawed-off shotgun. As such, we find no error in the postconviction court's determination that a sufficient factual basis supported the sawed-off shotgun enhancement. Accordingly, we affirm.

[30] Affirmed.

Riley, J., and Altice, J., concur.