## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 12 2019, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andrey Farafonov,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 12, 2019

Court of Appeals Case No.
18A-CR-363

Appeal from the Marion Superior Court

The Honorable Barbara Cook Crawford, Judge

Trial Court Cause No.
49G09-1703-F6-10934

**Barnes, Senior Judge.**

# Statement of the Case

Andrey Farafonov appeals his conviction of battery against a public safety official, a Level 6 felony,[1] and the trial court's order that he pay a fine, costs, and fees. We affirm his conviction. With regard to the fine, costs, and fees, the judgment of the trial court is vacated and remanded for further proceedings.

# Issues

Farafonov presents two issues for our review, which we restate as:

> I. Whether the combination of alleged instructional error and comments by the prosecutor produced fundamental error.

> II. Whether the trial court erred by failing to conduct an adequate indigency hearing.

# Facts and Procedural History

In March 2017, an Indianapolis police officer was dispatched to a downtown street location for "a person down." Tr. Vol. II, p. 75. When the officer arrived at the location, she found four men: one in the street, one near a concrete wall, and two near a fence "completely passed out turning blue with their heads slumped over." *Id.* at 80. She also saw hypodermic needles and "roaches" as are used for smoking marijuana or spice. *Id.* at 82. Based upon her training

---

[1] Ind. Code § 35-42-2-1 (2016).

and assessment of the scene, the officer believed the men had overdosed on a narcotic. One of the four men later stated that they had smoked spice.

[4] One of the first paramedics to arrive on the scene began treating Farafonov, who was blue, unconscious, and not breathing. She ventilated Farafonov and administered Narcan. Farafonov was then secured to a stretcher with ankle and waist straps and loaded into an ambulance. At that point, he became violent. His eyes got very large, he bared his teeth, and he began growling at the paramedic and punching her. Farafonov struck the paramedic's arms numerous times, causing bruising that lasted three to four weeks, and pulled the microphone off her uniform. A squad medic in the ambulance attempted to pull Farafonov off of the paramedic but was unable to do so. With the help of others, Farafonov was restrained, but he continued screaming, grunting, growling, and "acting very irate." *Id.* at 95. At trial, the paramedic and an EMT testified that people who have ingested spice may exhibit characteristics such as unconsciousness, not breathing, dilated pupils, erratic behavior, and behaving violently.

[5] Farafonov testified at trial that he was residing at a local mission and was socializing with friends outside the mission building. He stated that he accepted a shot or two sips of a mixture of vodka and Sprite from a friend and that it "was laced with unknown poison." *Id.* at 124. He had no recollection of battering the paramedic, and he denied taking any spice or other drugs. Although not evidence, during his closing argument Farafonov stated that he "strongly believe[d] that it was a chemical reaction when [he] was treated inside

the ambulance that caused [him] to go ballistic to cause this accident." *Id.* at 142.

The jury found Farafonov guilty as charged, and he was sentenced to 730 days, with 365 days on home detention followed by 365 days on probation. He now appeals.

# Discussion and Decision

## I. Fundamental Error

### *A. Jury Instruction*

Farafonov first contends the trial court erred by failing to instruct the jury on the defense of involuntary intoxication. He acknowledges that he failed to tender a proposed instruction to the court, but he claims the trial court should have sua sponte instructed the jury.

As a preliminary matter, we note that Farafonov chose to proceed pro se at trial. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016), *trans. denied*. This means that they must follow the established rules of procedure and accept the consequences when they fail to do so. *Id.* It is not the court's role to become an advocate for a party. *Id.*

When "the claimed error is failure to give an instruction, a tendered instruction is necessary to preserve error because, without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity

to consider and implement the request." *Mitchell v. State*, 742 N.E.2d 953, 955 (Ind. 2001). Thus, failure to tender an instruction results in waiver of the issue for review. *Id.* Nevertheless, Farafonov attempts to avoid waiver by asserting that fundamental error occurred due to the trial court's failure to sua sponte instruct the jury on the defense of involuntary intoxication in combination with statements by the prosecutor during closing argument.

[10] The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *trans. denied*. Stated another way, fundamental error is error that makes a fair trial impossible or constitutes a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018). This doctrine is available only in egregious circumstances. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

[11] The involuntary intoxication statute provides:

> It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body:
>
> (1) without his consent; or

(2) when he did not know that the substance might cause intoxication.

Ind. Code § 35-41-3-5 (1997). Farafonov presented evidence that he voluntarily drank his friend's vodka/Sprite mixture. The evidence established neither forced introduction of an intoxicant nor ignorance that the substance was an intoxicant. Instead, Farafonov admitted that he drank the vodka mix willingly. His unsubstantiated statement at trial that the vodka/Sprite mix contained an unknown poison was merely self-serving and seemingly far-fetched. Moreover, the credible evidence indicated that he had consumed a narcotic. Thus, the failure of the trial court to sua sponte instruct the jury on the defense of involuntary intoxication in this case is not tantamount to an undeniable and blatant violation of basic principles of due process.

### B. Prosecutorial Statements

[12] During closing argument, one of the deputy prosecutors stated, "Now the Defendant has suggested that his behavior is the result of intoxication of some sort. Voluntary or involuntary, it doesn't matter. Indiana [l]aw is clear, intoxication is not a defense[,] and we've heard nothing other than his self-serving testimony that suggest[s] it was anything other than voluntary whether it was alcohol or spice or some other illicit narcotic." Tr. Vol. II, p. 141. Farafonov argues that the court's alleged instructional error, discussed *supra*, combined with the deputy prosecutor's statement during closing argument amount to fundamental error.

[13]    While the deputy prosecutor did misspeak during closing argument, the State had begun the trial by explaining to the jury panel during voir dire that involuntary intoxication is a defense:

> So, just to give you an overview of the law of Indiana.  If you are voluntarily intoxicated, it doesn't matter but if you are involuntarily intoxicated; that can be a defense . . . . [T]he Defense can always put forth an affirmative [d]efense. Involuntary Intoxication is one of those defenses and they would have to prove that it's more likely than not that their impairment or intoxication was unintentional (involuntary).  So, they would have the burden to prove that after we have essentially made our case.

Supp. Tr. Vol. II, p. 20.  Moreover, on rebuttal closing argument, a second deputy prosecutor corrected the first deputy's misstatement:  "Voluntary intoxication[ ] is not a defense in the State of Indiana.  Involuntary intoxication can be a defense . . . ."  *Id.* at 144.  Thus, in view of the fact that the misstatement by the deputy prosecutor was book-ended by the State's correct explanation of the defense of involuntary intoxication during voir dire and its correct statement later in rebuttal that involuntary intoxication is a defense, the misstatement was *de minimis*.  Farafonov has not met the onerous burden of showing fundamental error.

[14]    Therefore, having found neither error caused by the trial court's failure to sua sponte instruct the jury nor error caused by the State's misstatement, we find nothing about the combination of the two to be so egregious as to rise to fundamental error.

# II. Indigency Hearing

[15] Farafonov next alleges that the trial court failed to conduct an adequate indigency hearing before imposing costs, a fine, and fees. Sentencing decisions include decisions to impose fees and costs, and we review a trial court's sentencing decision for an abuse of discretion. *Coleman v. State*, 61 N.E.3d 390, 392 (Ind. Ct. App. 2016). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* "If the fees imposed by the trial court fall within the parameters provided by statute, we will not find an abuse of discretion." *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011).

[16] If the trial court imposes costs or fines on a defendant, it is required to hold an indigency hearing. Ind. Code §§ 33-37-2-3(a) (2007) (costs), 35-38-1-18(a) (2007) (fines); *see also Johnson v. State*, 27 N.E.3d 793, 794-95 (Ind. Ct. App. 2015) (explaining that trial court is required to hold indigency hearing for probation fees). Additionally, these two statutes give the trial court the discretion to suspend payment of costs and fines until the defendant has completed all or part of his sentence. *See* Ind. Code §§ 33-37-2-3(b), 35-38-1-18(b). If the court suspends payment, it shall conduct the indigency hearing at the time the costs and fines are due. *Id.* With regard to probation fees, this Court has stated that "[a] trial court acts within its authority when it chooses to wait and see if a defendant can pay probation fees before it finds the defendant indigent." *Johnson*, 27 N.E.3d at 795. Thus, "[a]t the latest, an indigency

hearing for probation fees should be held at the time a defendant completes his sentence." *Id.*

[17] Here, at sentencing the trial court imposed Farafonov's sentence and then stated:

> THE COURT:  With regards to fines and cost, I see in your Pre-sentence Investigation report that you have been employed at other times.
>
> DEFENDANT FARAFONOV:  Yes, ma'am.
>
> THE COURT:  Okay.  What kind of work have you done?
>
> DEFENDANT FARAFONOV:  I worked at the restaurant as a prep cook and I also go to Culinary School.  I am getting ready to go to Culinary School to complete my training and then I will have a job placement.
>
> THE COURT:  The Court at this time is going to fine you fifty ($50) dollars, assess Court cost[s] of one hundred eighty-five dollars and fifty cents ($185.50).  In addition[ ], during the time you are on Probation, the Court at this time is going to assess Probation fees of one hundred ($100) dollars as the initial fee and thirty ($30) dollars per month during the term of probation.

Tr. Vol. II, pp. 159-60.

[18] In *Burnett v. State*, 74 N.E.3d 1221, 1227 (Ind. Ct. App. 2017), a panel of this Court determined that a sufficient inquiry into a defendant's ability to pay might include questions concerning his exact yearly income, his assets or debts,

or his financial expenses that could have an impact on his ability to pay such as the cost of his rent, utilities, or transportation to and from work, medical expenses, or any dependents. The scant information obtained by the trial court in this case is not adequate to assess Farafonov's ability to pay the $235.50 in a fine and court costs and the $460 in probation fees ordered by the court. Moreover, although not conclusive of Farafonov's indigency, the court did find him indigent at his initial hearing on this charge and subsequently appointed a public defender to represent him in the current appeal. *See Henderson v. State*, 44 N.E.3d 811, 815 (Ind. Ct. App. 2015) (court's appointment of trial and appellate counsel implies finding of indigency but is not conclusive as to defendant's ability to pay fines or costs).

[19] The trial court erred in failing to make an adequate inquiry into Farafonov's indigency or ability to pay the costs, fine, and fees ordered. Therefore, we remand with instructions to hold a hearing on Farafonov's indigency or ability to pay.

## Conclusion

[20] For the reasons stated, the judgment of the trial court is affirmed with respect to Farafonov's conviction. The judgment of the trial court regarding the costs, fine, and fees owed by Farafonov is vacated and remanded for further proceedings consistent with this opinion.

[21] Affirmed in part, vacated and remanded in part.

Robb, J., and Tavitas, J., concur.