## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 15 2020, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Pedro Vicente
Westville Correctional Facility
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Pedro Vicente,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

January 15, 2020

Court of Appeals Case No.
18A-PC-2503

Appeal from the Clinton Circuit Court

The Honorable Bradley K. Mohler, Judge

Trial Court Cause No.
12C01-1505-PC-436

**Crone, Judge.**

# Case Summary

[1] Pedro Vicente, pro se, appeals the denial of his petition for post-conviction relief ("PCR"). He asserts that the post-conviction court abused its discretion in excluding evidence and in not offering him the option of presenting his evidence by affidavit; that he was deprived of due process because the State failed to prove all elements of his crime beyond a reasonable doubt; that the post-conviction court clearly erred in determining that he failed to demonstrate that he received the ineffective assistance of trial counsel; and that he received ineffective assistance of appellate counsel. Finding either that he failed to show the alleged error or that he waived his claim of error, we affirm.

# Facts and Procedural History

[2] In March 2012, nine-year old J.M. lived with her mother ("Mother"), her grandmother ("Grandmother"), and Vicente, who was Mother's boyfriend. J.M. is profoundly disabled. She has cerebral palsy and epilepsy and is unable to eat, walk, or care for herself. She communicates only nonverbally, such as smiling, eye contact, and raising her arms. Mother and Grandmother are her primary caregivers. Vicente also helped care for J.M.

[3] On March 2, 2012, via monitor, Mother observed Vicente change J.M.'s diaper. At one point, Mother saw Vicente jerk his hand away from between J.M.'s legs. Mother later noticed a small tear to the outside of J.M.'s vagina. However, Mother was not alarmed because she believed that Vicente had caused it by

accidentally scraping J.M. with his fingernail. During the next few days, Mother noticed a slow trickle of blood from J.M.'s vaginal area.

[4] On March 7, 2010, about 5:30 p.m., Vicente came home from work. Mother and Grandmother decided to go to the grocery store. Before leaving, Mother changed J.M.'s diaper and observed that, other than the small injury noted earlier, J.M. was fine. Mother and Grandmother left between 6:00 and 6:30 p.m. Vicente remained home with J.M. He was sitting on the couch when Mother and Grandmother left; this was the only time that day that anyone was home alone with J.M. Mother and Grandmother returned home between 7:30 and 7:45 p.m. Vicente was sitting on the couch.

[5] Around 10:00 p.m., Mother changed J.M.'s diaper. Mother screamed when she discovered that J.M.'s diaper was filled with blood and a blood clot several inches long. Grandmother called 911, and J.M. was taken by ambulance to the hospital. On the way to the hospital, Vicente kept telling Mother, "I'm sorry[,]" and, "I told you I didn't mean to hurt her." Trial Tr. Vol. 1 at 211.

[6] At the hospital, J.M. was examined by doctors and a forensic nurse. J.M. had two tears to her vagina, both requiring stitches. Doctors believed that such tears were caused by the penetration of J.M.'s vagina by blunt force trauma. Given that J.M. had arterial bleeding, J.M.'s injuries could not have occurred days earlier but must have occurred shortly before Mother changed J.M.'s diaper around 10:00 p.m. Dr. Roberta Hibbard testified at trial that she could not

"give you a five minutes, ten minutes, yes, but it's not days. It's a matter of minutes to you know, an hour or so probably." Trial Tr. Vol. 2 at 352.

[7] The State charged Vicente with class A felony child molesting. At his trial, Vicente was represented by attorney Jeffrey Little. At the close of the State's evidence, Little moved for a directed verdict, arguing that the State had not produced sufficient evidence to show that Vicente was responsible for J.M.'s injuries or how her injuries were sustained. *Id*. at 420. The trial court denied the motion. The jury found Vicente guilty as charged. The trial court sentenced him to forty-five years in the Indiana Department of Correction.

[8] Vicente, represented by an attorney, appealed his conviction. *Vicente v. State*, No. 12A04-1403-CR-133, 2014 WL 6977925 (Ind. Ct. App. Dec. 10, 2014), *trans. denied* (2015). In his direct appeal, Vicente argued that the trial court committed reversible error in denying Vicente's for-cause juror challenges and in instructing the jury. Another panel of this Court concluded that Vicente failed to show that he was prejudiced by the denial of his juror challenges and that the trial court did not abuse its discretion in instructing the jury. *Id*. at * 7. Vicente's conviction was affirmed, and his petition for transfer was denied.

[9] In April 2015, Vicente, pro se, filed a PCR petition, alleging that his trial counsel and appellate counsel were ineffective and stating that he would develop support for his allegations in an amended petition. PCR App. Vol. 2 at 17. In May 2017, Vicente amended his PCR petition to allege that his trial counsel was ineffective in failing to investigate and provide a meaningful

defense, and that if trial counsel had investigated, counsel would have found that forensic evidence established that J.M. was not in his care when the alleged molestation occurred. *Id.* at 23. His amended PCR petition did not address his initial allegation regarding ineffective assistance of appellate counsel.

[10] In August 2018, the post-conviction court held an evidentiary hearing on Vicente's PCR petition. During the hearing, Vicente was assisted by a translator. Vicente called trial counsel Little to testify. Before beginning direct examination, Vicente proffered fifteen pages of the trial transcript as exhibit 1. The State objected that Vicente had not provided the State with any exhibits, despite having been ordered to provide any exhibits thirty days prior to the hearing. The post-conviction court declined to admit Vicente's exhibit but indicated that it would reconsider if trial counsel was unable to recall the trial. PCR Tr. at 5. During his direct examination of attorney Little, Vicente repeatedly attempted to ask about the evidence at trial that he said would show his innocence. The State repeatedly objected to Vicente's attempts to have attorney Little comment on the evidence. The post-conviction court sustained the State's objections and explained to Vicente the purpose of the hearing more than once. For example, the post-conviction court told Vicente,

> What – what you need to – Mr. Viciente [sic]. What you're trying to do with a post-conviction relief is to show either that Mr. Little didn't do what you think he was supposed to or that the Court made a mistake at some point. This is not a new trial. I'm not evaluating the evidence. I'm not second-guessing what the jury did. Your job is to outline or ask questions about anything where you think a mistake was made either by the

Court or by the attorney. But, this [is] not me re-evaluating the evidence.

….

If you think a mistake was made during the trial then we can talk about that. This is not – you have to focus on what was done during the trial.

PCR Tr. Vol. 2 at 6-7; *see also id*. at 9 ("Now for what you have to go through today is to try to say, again what Mr. Little did or did not do."). To help Vicente ask the appropriate questions, the post-conviction court asked him to state in his own words what attorney Little did or did not do that was ineffective. Vicente thought that perhaps there were questions that attorney Little failed to ask of witnesses, and the post-conviction court suggested that Vicente ask attorney Little about questions to witnesses. However, Vicente continued to refer to the trial evidence.

[11] At one point, the post-conviction court said to Vicente, "If you have a question about what he did or did not do that you wanna ask him I'll give you that chance. Otherwise I'm gonna let him step down because all you're doing is wanting to re-hash evidence that the jury looked at." *Id.* at 10. Vicente questioned attorney Little about the evidence the State had used to support the child molestation charge against him. After allowing attorney Little to respond, the post-conviction court told Vicente that it would give Vicente one last opportunity for questions about attorney Little's representation. *Id*. at 13. Vicente responded that all his questions were similar to questions he had

already asked and that he would wait for another occasion. The post-conviction court allowed attorney Little to step down and explained to Vicente that there was not going to be another hearing. The post-conviction court again asked Vicente if he would like to state in his own words why he believed attorney Little did not do a good job. *Id*. Vicente told the post-conviction court that he believed that attorney Little failed by not bringing to the jury's attention that one of the doctors had testified that J.M's injury was caused about an hour before it was discovered, at the time Mother and Grandmother had control over J.M., and his accidental fingernail scraping of J.M. had occurred two days earlier. *Id*. at 13-14. The post-conviction court took the matter under advisement and subsequently issued findings of fact and conclusions of law, denying Vicente's petition. Vicente filed an objection and request for rehearing, which the post-conviction court also denied. This appeal ensued.

## Discussion and Decision

[12] Initially, we note that Vicente has chosen to proceed pro se. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016), *trans. denied* (2017). This means that they must follow our established rules of procedure and accept the consequences when they fail to do so. *Id*.

[13] The appellate standard of review regarding post-conviction proceedings is well settled.

> Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Post-conviction proceedings do not offer a super appeal, rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Those grounds are limited to issues that were not known at the time of the original trial or that were not available on direct appeal. Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are res judicata. Claims of ineffective assistance of counsel and juror misconduct may be proper grounds for post-conviction proceedings.
>
> Because the defendant is appealing from the denial of post-conviction relief, he is appealing from a negative judgment and bears the burden of proof. Thus, the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. In other words, the defendant must convince this Court that there is no way within the law that the court below could have reached the decision it did. We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law.

*Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (citations and quotation marks omitted). We will not reweigh the evidence or judge the credibility of witnesses and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014).

# Section 1 – The post-conviction court did not abuse its discretion in excluding evidence.

[14] Vicente argues that the post-conviction court erred by not permitting him to refer to trial evidence. As with a trial court, a post-conviction court has broad discretion in ruling on the admissibility of evidence, and we will reverse a post-conviction court's ruling only for an abuse of that discretion. *Truax v. State*, 856 N.E.2d 116, 124 (Ind. Ct. App. 2006). An abuse of discretion occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Id*.

[15] Vicente contends that trial evidence was admissible because the "purpose for having an evidentiary hearing in this case, was to make a record of facts/evidence from the trial, that [Vicente] needed to show, that attorney Little was ineffective as trial counsel." Appellant's Br. at 12 (emphases omitted). Vicente appears to claim that it was necessary to set forth the trial evidence to show that trial counsel was ineffective. While trial evidence might be relevant to establishing prejudice resulting from some types of ineffective assistance, Vicente ignores that the first step in establishing ineffective assistance focuses on trial counsel's performance. *See Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017) (explaining that to show ineffective assistance of counsel, defendant must first show deficient performance and then prejudice resulting from counsel's unprofessional errors). Performance includes conduct such as failure to investigate, file motions, cross-examine witnesses, object to evidence, etc. Here, the post-conviction court explained several times to Vicente that he

needed to ask trial counsel what he did or did not do to show that counsel made a mistake. However, Vicente appeared not to have any questions as to what trial counsel did or did not do at trial. Therefore, we cannot say that the trial court abused its discretion in excluding evidence.

## Section 2 – The post-conviction court did not err by failing to offer Vicente the option of submitting his PCR evidence by affidavit.

Vicente contends that the post-conviction court erred by not allowing Vicente to submit his PCR evidence by affidavit when the court knew there was a serious language barrier. We observe that at the PCR hearing, Vicente had a translator to assist him and never indicated to the court that he was unable to understand the court or the witness. In addition, Vicente never requested to submit his evidence by affidavit. We find no error here.

## Section 3 –Vicente's due process argument is a sufficiency of the evidence argument that is unavailable in post-conviction proceedings.

Vicente asserts that he was denied due process because the State failed to prove every element of the crime beyond a reasonable doubt. His argument amounts to a claim of insufficient evidence. As previously noted, post-conviction proceedings are not a substitute for a direct appeal from a conviction. Ind. Post-Conviction Rule 1(b). "Issues that were available, but not presented, on direct appeal are forfeited on post-conviction review." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000)*, cert. denied* (2002). Whether the evidence was

sufficient to support his conviction was an issue available for direct appeal, but it was not raised. It is not now available for consideration in post-conviction proceedings. Accordingly, we will not address the issue.

## Section 4 – The post-conviction court did not clearly err in finding that Vicente failed to show that his trial counsel's assistance was ineffective.

[18] When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Humphrey*, 73 N.E.3d at 682. "To satisfy the first prong, 'the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment.'" *Id*. (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second prong, the defendant must show prejudice. *Id*. To demonstrate prejudice from counsel's deficient performance, a petitioner need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Middleton v. State*, 72 N.E.3d 891, 891-92 (Ind. 2017) (emphasis and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

[19] Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Hinesley*, 999 N.E.2d at 982. When considering a claim of ineffective assistance of counsel, we strongly presume "that counsel rendered adequate assistance and made all significant decisions in

the exercise of reasonable professional judgment." *Id.* (citation omitted). We presume that counsel performed effectively, and a defendant must offer strong and convincing evidence to overcome this presumption. *Id.*

[20] Vicente contends that his trial counsel provided ineffective assistance in failing to move for a directed verdict based on the State's failure to prove the elements of child molesting beyond a reasonable doubt. However, he did not present this contention to the post-conviction court. Post-conviction claims that were not presented to the post-conviction court are not available for appellate review. *Walker v. State*, 843 N.E.2d 50, 57 (Ind. Ct. App. 2006), *trans. denied*; *see also Richardson v. State*, 800 N.E.2d 639, 647 n.4 (Ind. Ct. App. 2003) (holding that petitioner waived claim because it was not presented to post-conviction court), *trans. denied* (2004). At any rate, Vicente's trial attorney moved for a directed verdict, and therefore cannot be deemed ineffective for failing to do so.

[21] To the extent that Vicente may be arguing that trial counsel was ineffective because counsel failed to pursue evidence at trial that proved Vicente's innocence, we note that at the PCR hearing Vicente presented no evidence regarding what trial counsel did or did not do. As such, Vicente has not met his burden to show that the post-conviction court clearly erred in determining that he failed to demonstrate that he received ineffective assistance of trial counsel.

## Section 5 – Vicente waived his claim that his appellate counsel provided ineffective assistance.

Vicente also claims that his appellate counsel provided ineffective assistance by failing to consult with him before filing a brief on his behalf in his direct appeal. Vicente claimed ineffective assistance of appellate counsel in his original PCR petition, but he never alleged facts in support thereof or even indicated in what respect appellate counsel was ineffective. At the PCR hearing, Vicente presented no evidence, witnesses, or argument pertaining to appellate counsel. Therefore, Vicente has waived this claim. *See Walker*, 843 N.E.2d at 57.

Based on the foregoing, we affirm the denial of Vicente's petition for post-conviction relief.

Affirmed.

May, J., and Pyle, J., concur.