## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 14 2018, 10:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas F. Wallace
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sybron L. Pinkston,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 14, 2018<br><br>Court of Appeals Case No.<br>02A03-1707-CR-1745<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Wendy W. Davis, Judge<br><br>Trial Court Cause No.<br>02D04-1704-F6-355 |

**Crone, Judge.**

## Case Summary

[1] A jury convicted Sybron L. Pinkston of level 6 felony resisting law enforcement, class A misdemeanor operating a motor vehicle with a suspended license, and class B misdemeanor leaving the scene of an accident. He appeals, claiming that he was denied due process when he was forced to wear shackles during trial and challenging the sufficiency of the evidence to support his convictions. He also challenges the trial court's treatment of mitigating circumstances during sentencing and claims that his two-and-a-half-year aggregate sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

## Facts and Procedural History

[2] In March 2017, Fort Wayne Police Detective George Nicklow was working a midafternoon patrol. A silver vehicle passed him, and he noticed what appeared to be a bullet hole in the vehicle. He contacted fellow Detective Robert Hollo to request assistance. Detective Hollo pulled up next to the silver vehicle and recognized the driver as Pinkston, based on previous dealings. He later testified that he had "no doubt in [his] mind" that the driver was Pinkston, that he had a "clear unimpeded view" through the driver's side window, and that there was nobody else inside the vehicle. Tr. Vol. 3 at 75-76, 82-83, 138-39.

[3] Detective Nicklow, also familiar with Pinkston from past entanglements with law enforcement, knew that Pinkston had a suspended driver's license, so he followed him. When Pinkston failed to use his turn signal, Detective Nicklow initiated a traffic stop. As he walked toward the vehicle, he recognized

Pinkston's face in the driver's sideview mirror. Before he could engage Pinkston, Pinkston sped away. Detective Hollo pursued Pinkston, who momentarily evaded him by driving through a residential area at sixty-five miles per hour. Shortly thereafter, Detective Hollo came upon the vehicle, which Pinkston had crashed into a small tree in a private yard. Pinkston had fled the scene, and the officers were unable to apprehend him. The homeowner told police that the driver of the silver vehicle had not stopped to give him any insurance information or identification. Police discovered that the registered owner of the silver vehicle was Pinkston's grandmother ("Grandmother"), who told police that she had given Pinkston her vehicle that afternoon and asked him to go buy her some food. According to Grandmother, Pinkston was alone when he left her home and never returned with any food. She later learned that her damaged vehicle was in the tow yard.

[4] The State charged Pinkston with level 6 felony resisting law enforcement, class A misdemeanor driving on a suspended license, and class B misdemeanor leaving the scene of an accident. Pinkston proceeded pro se, and just before his jury trial, he asked the trial court about removing his leg shackles. The trial court indicated that they would not be removed but that the court had put safeguards in place to ensure that the jury would not be aware that he was wearing them. The jury convicted Pinkston as charged. During sentencing, the trial court found as aggravators Pinkston's criminal history, particularly his convictions for escape and resisting law enforcement, his failure to respond to rehabilitation efforts, and his active warrant in Ohio. The trial court found his

parental status to be mitigating and sentenced him to concurrent terms of two years and 183 days for resisting law enforcement, one year for driving while suspended, and 180 days for leaving the scene of an accident. Pinkston now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Pinkston waived his due process argument by failing to object to wearing leg shackles during trial.

Pinkston first maintains that he was denied due process when the trial court forced him to wear leg shackles during his jury trial.[1] At the outset, we note that Pinkston chose to proceed pro se throughout the proceedings below. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016). This means that they must follow the established rules of procedure and accept the consequences when they fail to do so. *Id.*

Where a party claims that he was denied due process, we review the matter de novo. *Hilligoss v. State*, 45 N.E.3d 1228, 1230 (Ind. Ct. App. 2015). Because he is presumed innocent until proven guilty, a defendant "has the right to appear

---

[1] Pinkston also alleges that he was forced to wear prison attire. Because he has failed to develop a cogent argument with citation to relevant authority, he has waived this issue. Ind. Appellate Rule 46(A)(8); *Nur v. State*, 869 N.E.2d 472, 482 (Ind. Ct. App. 2007), *trans. denied* (2008). Even so, the record simply does not bear this out. During a pretrial conference, the trial court addressed clothing with Pinkston and indicated that the public defender's office could provide him with an outfit suitable for trial. Pinkston assured the trial court that he could obtain clothing for trial. Also, two separate times, Pinkston was identified in court during trial as wearing two different-colored shirts, which suggests that he was not wearing prison garb. Accordingly, we limit our discussion to Pinkston's leg shackles.

before a jury without physical restraints, unless such restraints are necessary to prevent the defendant's escape, to protect those present in the courtroom, or to maintain order during the trial." *Overstreet v. State*, 877 N.E.2d 144, 160 (Ind. 2007). "For this presumption [of innocence] to be effective, courts must guard against practices that unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." *Id*. "[G]iven their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." *Deck v. Missouri*, 544 U.S. 622, 632 (2005). In other words, if the trial court decides to physically restrain the defendant in the jury's presence, it must place in the record its reasons and facts supporting its decision to use those restraints. *Corbin v. State*, 840 N.E.2d 424, 431 (Ind. Ct. App. 2006) (quoting *French v. State*, 778 N.E.2d 816, 820 (Ind. 2002)). That did not happen in this case.

[7] Here, the trial court instructed Pinkston to conduct his voir dire while seated at counsel table. After voir dire and before the jury re-entered the courtroom, Pinkston asked why he still had to wear his leg shackles. The trial court responded, "Because you are in custody," and Pinkston said, "Okay." Tr. Vol. 2 at 230. The court explained safeguards that it had put in place to ensure that the jury would be unaware of Pinkston's shackles, i.e., the courtroom had been rearranged and counsel tables had been skirted. *Id*. As to each safeguard, Pinkston responded, "Okay," and asked questions, if any clarification was necessary. *Id*. The court also explained the special procedure for proffered exhibits to be given to the bailiff to bring forward for introduction and ordered

that any bench conferences be held outside the jury's presence. *Id.* Additionally, to ensure parity, the court ordered that all arguments and questioning by both Pinkston and the prosecutor be made from a seated or standing position behind counsel tables. *Id.* at 223-24.

[8] For as thoroughly as the trial court explained the safeguards, it failed in its duty to explain the reasons for requiring Pinkston to remain shackled in the first place, i.e., that he posed a flight risk or a risk to the security or order in the courtroom due to certain facts. *See Overstreet*, 877 N.E.2d at 160. Simply put, the trial court's general in-custody statement, standing alone, is insufficient to warrant the use of restraints during trial. *See Deck*, 544 U.S. at 634 (trial court's stated reason for defendant's restraints during sentencing that he "has been convicted" held insufficient explanation of reasons).

[9] However, Pinkston never objected to the trial court's decision to keep him restrained in leg shackles. In fact, his repeated "okay" responses indicate his tacit agreement to the trial court's arrangements. As such, he has waived the issue for appeal. *See Corbin*, 840 N.E.2d at 431 (finding waiver of argument that shackled defendant was denied constitutional presumption of innocence where defendant failed to object on that basis below); *see also Howard v. State*, 459 N.E.2d 29, 32 (Ind. 1984) (failure to object to being tried in prison clothes held sufficient to waive due process right to appear before jury in civilian clothes). Waiver notwithstanding, the trial court put safeguards in place to eliminate the possibility that the jury would see Pinkston's leg shackles, and the record before us is devoid of any evidence indicating that the jury in fact saw them or that the

restraints interfered with the presentation of his case. We find no reversible error here.

## Section 2 – The evidence is sufficient to support Pinkston's convictions.

[10] Pinkston challenges the sufficiency of the evidence to support his convictions. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*. The evidence need not "overcome every reasonable hypothesis of innocence." *Dalton v. State*, 56 N.E.3d 644, 647 (Ind. Ct. App. 2016 (quoting *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)), *trans. denied*.

[11] Pinkston's only argument concerns his identity as the driver of the vehicle during the chase and ensuing crash. He asks that we impinge upon the jury's function to judge witness credibility by applying the "incredible dubiosity" rule, which states,

> If a sole witness presents inherently improbable testimony and
> there is a complete lack of circumstantial evidence, a defendant's
> conviction may be reversed. This is appropriate only where the

court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (citations omitted). For this rule to apply, there must be a sole testifying witness, testimony that is inherently contradictory, equivocal, or coerced, and a complete absence of circumstantial evidence. *Moore*, 27 N.E.3d at 756.

[12] Pinkston's reliance on the incredible dubiosity rule is misplaced. Detectives Nicklow and Hollo both testified that they recognized Pinkston as the driver of the vehicle involved in the police chase and registered to Grandmother, who testified that she lent Pinkston her vehicle shortly before the police chase. In other words, the identification testimony of more than one witness was supported by circumstantial evidence that Pinkston was the driver of the vehicle. As such, the incredible dubiosity rule does not apply.

[13] Pinkston attempts to discredit Grandmother's testimony based on her advanced age and medications that cause confusion. He also challenges the accuracy of the detectives' identification through car windows and sideview mirrors and cites their conflicting testimony as to whether he was wearing a hat or a hoodie. These arguments are invitations to reweigh evidence and judge witness credibility, which we may not and will not do. *See id*. at 754. The evidence is sufficient to support Pinkston's convictions, and therefore we affirm them.

## Section 3 – The trial court acted within its discretion in its treatment of mitigating circumstances during sentencing.

[14] Pinkston asserts that the trial court abused its discretion in its treatment of mitigating circumstances during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and so long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). One of the ways in which a trial court may abuse its discretion is if the sentencing statement omits mitigating factors that are clearly supported by the record and advanced for consideration. *Anglemyer*, 868 N.E.2d at 490-91.

[15] The trial court is not obligated to accept the defendant's argument concerning what constitutes a mitigating factor. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied*. Moreover, if the trial court does not find the existence of a mitigator after it has been argued by counsel, the court is not obligated to explain why it found the circumstance not to be mitigating. *Anglemyer*, 868 N.E.2d at 493.

[16] Here, Pinkston claims that the trial court overlooked as mitigators his desire to seek higher education as well as his being a loving father to his children. When pronouncing sentence, the trial court identified as mitigating Pinkston's status

as a father but simply commented no further. As for Pinkston's educational pursuits, the transcript shows an exchange during which Pinkston claimed that he "was on [his] way to college …. [in] Salt Lake City, Utah," to which the trial court pointedly asked, "While you were on bond?" and Pinkston responded, "Yes ma'am." Tr. Vol. 4 at 29-30. The fact that Pinkston disagrees with the court's conclusion regarding the effect of his proffered mitigators on his sentence does not create an abuse of discretion on the court's part. *See Healey*, 969 N.E.2d at 616. The trial court acted within its discretion in its treatment of mitigating factors.

## Section 4 – Pinkston has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of the offenses and his character.

[17] Pinkston asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, our principal role is to leaven the outliers, focusing on the length of the aggregate sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court

in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[18] In considering the nature of Pinkston's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[19] The jury convicted Pinkston of one level 6 felony, one class A misdemeanor, and one class B misdemeanor. The statutory range for a level 6 felony is six months to two and one-half years, with an advisory term of one year. Ind. Code § 35-50-2-7(b). A person convicted of a class A misdemeanor shall be imprisoned for a fixed term not to exceed one year. Ind. Code § 35-50-3-2. A

person convicted of a class B misdemeanor shall be imprisoned for a fixed term not to exceed 180 days. Ind. Code § 35-50-3-3.

[20] At first glance, Pinkston's offenses are not especially egregious. After all, no one was injured, and Pinkston damaged only a tree and his grandmother's vehicle. However, the record shows that he led police on a high-speed chase, reaching speeds of over sixty-five miles per hour, in a residential neighborhood where pedestrians and residents were present. Thus, Pinkston's actions were extremely dangerous and could have had catastrophic consequences. But Pinkston, a suspended driver out on bond for other crimes, and with an active arrest warrant in another state, did not stick around to assess or report the damage he had caused. Instead, he ran.

[21] Pinkston's character does not militate toward a shorter sentence. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Pinkston is a career criminal and "runner." In reviewing the record and particularly the presentence investigation report, we find that Pinkston's significant and protracted criminal history reflects a lifestyle of disregard for the law. He began his criminal activities at just thirteen years of age, and by the time he was twenty-eight, he had amassed nineteen misdemeanor and four felony convictions. He has demonstrated a penchant for violence, flight, and defiance of authority. His record includes battery and domestic battery, escape, and four previous convictions for resisting law enforcement, two as felonies, plus a juvenile true finding for the same offense.

He has failed to respond positively to lenient sentencing alternatives, having accumulated two probation revocations and one suspended sentence revocation. He was out on bond when he committed the current offenses and was the subject of an active arrest warrant in Ohio.

[22] Finally, Pinkston's allocution statement reflects an attempt to deflect blame and relitigate his guilt. He persisted in painting Grandmother as a forgetful and heavily medicated old woman and continued to hurl disparaging accusations against Detectives Nicklow and Hollo. *See, e.g.,* Tr. Vol. 4 at 29 (the "officers are fabricating stories … deflating my character, and lying under perjury on myself"). Simply put, Pinkston's behavior during sentencing was detrimental to making his case for a reduced sentence. Consequently, we affirm.

[23] Affirmed.

Robb, J., and Bradford, J., concur.