Larry E. LAMPKINS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 48S00–0010–CR–614.

Supreme Court of Indiana.

Nov. 22, 2002.

Thomas G. Godfrey, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Larry Lampkins was convicted of murder and sentenced to sixty years in prison. In this direct appeal from the trial court, Lampkins advances three arguments: (1) the trial court improperly influenced the testimony of a witness; (2) the trial court erroneously admitted two statements into evidence; and (3) the trial court erred in refusing to give the jury Lampkins' tendered instruction on self-defense. We affirm the trial court.

### Factual and Procedural Background

Larry Lampkins, his cousins, Antone "Boogie" Harris and Christopher Lampkins, and a friend, David Sullivan, all resided in Muncie. On the night of February 25, 2000, the four traveled to Anderson to visit the Vault, an under–21 club, where Harris got into an argument with Reginald Jones over a dice game. A crowd gathered as the dispute moved to the curb and parking lot outside of the club. While Harris and Jones were arguing, Larry Lampkins approached Jones from behind and

shot him twice in the back, mortally wounding him. A jury convicted Lampkins of murder and the trial court sentenced him to sixty years. This direct appeal followed.

## I. Trial Court Influence of State Witness

Lampkins first contends that the trial court, in a hearing outside the presence of the jury, improperly caused Antone Harris to change his testimony. Harris testified as a witness for the State against Lampkins, his cousin. The court overruled Lampkins' objections to the State's leading Harris based on Harris' "lack of forthrightness or eagerness to respond to the questions that were put before [him]." At the next break, after the jury had been dismissed, the court conducted a hearing to clarify its reasons for overruling Lampkins' objections. The court had heard Harris testify to the events of the evening on previous instances and explained that Harris' testimony on direct examination at trial was more labored and reticent than it had been before.[1] The trial court stated that it would exercise its discretion to allow the State some leeway in its questioning in order to develop Harris' testimony for the benefit of the jury.

The use of leading questions during direct examination generally rests within the trial court's discretion. *Williams v. State*, 733 N.E.2d 919, 922 (Ind.2000). Indiana Evidence Rule 611(c) provides that leading questions should not be used in direct examination of a witness except when necessary to develop that witness' testimony. The rule expressly allows for leading questions whenever a party has called a hostile witness, an adverse party, or a witness identified with an adverse party.[2] Harris and Lampkins were cousins. Although this relationship may not always create an identification, Harris testified that he had misled the police when he was first arrested because he was protecting his cousin, Lampkins. We find no abuse of discretion under the circumstances.

Lampkins claims that the comments by the court at this hearing, with Harris present, caused Harris to change his testimony, and thereby violated Lampkins' right to due process and his right to confront witnesses.[3] Lampkins contends that a trial court judge violates a defendant's due process rights if the judge exerts influence on a witness that controls the testimony of the witness or drives the witness from the stand. *See Jones v. State*, 655 N.E.2d 49, 57 (Ind.1995) (finding no due process violation when the trial

---

**1.** The record does not reveal the precise nature of the proceedings in which Harris first testified before trial. The trial court judge explained that he had heard this witness testify at least twice before, most recently 72 hours before his testimony in Lampkins' trial, and the court had formed "perceptions about his [Harris'] verbal skills and his memory...."

**2.** In this case, the trial court chose to allow the State to ask leading questions in lieu of having Harris declared a hostile witness: "There's a whole procedure, sometimes with prosecutors or defense lawyers asked to have a witness declared hostile. And that happens

sometimes under these circumstances. Another way to deal with that is just to tolerate leading questions. And that, in part, was why I was tolerating [them], even though they were leading questions. It's a discretionary call...."

**3.** The right to confront includes the right to cross-examine all witnesses. Lampkins does not indicate how he was denied either of these rights and cites no precedent in support of his argument. As such, he has waived any contention based on the confrontation clause. *See* Ind. Appellate Rule 46(A)(8) (formerly App.R. 8.3(A)(7)).

judge advised a witness who was about to implicate himself of his right against self-incrimination and the witness subsequently refused to testify); *see also Webb v. Texas*, 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (finding a due process violation in a trial judge's threatening remarks that were directed at a single defense witness, who was effectively driven from the witness stand). We agree with these general legal principles, but we conclude that Lampkins failed to establish that such a violation occurred.

■ Lampkins speculates that Harris heard the trial court's remarks to counsel at the bench conference explaining the rulings on the State's leading questions. Lampkins further claims that Harris understood the court's explanation and that it caused Harris to change his testimony. This contention lacks any foundation in the record and fails for this reason. *See Spurlock v. State*, 718 N.E.2d 773, 782 (Ind.Ct. App.1999); and *Boushehry v. State*, 648 N.E.2d 1174, 1177 (Ind.Ct.App.1995). *Cf. West v. State*, 755 N.E.2d 173, 184 (Ind. 2001) (citing *Cook v. State*, 734 N.E.2d 563, 567–8 (Ind.2000) (finding that absent some evidence in support of an argument on appeal, that argument amounts to mere speculation and cannot be grounds for reversal)). As the trial court proffered its explanation to counsel, Harris was sitting at the witness stand within a few feet of the trial court judge. It is possible, as Lampkins claims, that Harris heard and understood the court's explanation, but there is no evidence in the record to support either that conclusion or the claim that, if Harris heard the court, it affected his testimony. However Harris' demeanor may have changed, Lampkins made no effort to establish in the record that Harris had heard and understood the court's explanation, or that it affected Harris' testi-

mony. Rather, Lampkins simply moved for a mistrial.

Finally, there was no change in the substance of Harris' testimony after the bench colloquy. The subject matter of his testimony after this exchange was the events after the shooting. Before that point, he had been testifying as to the events at the Vault leading up to Jones' death.

We conclude Lampkins has not established that the trial court improperly influenced Harris.

**II. Hearsay Contentions**

Lampkins argues two different statements were improperly admitted into evidence.

A. *Detective's Statements in Interrogating Lampkins*

■ Lampkins contends that portions of his videotaped statement to police officers that was admitted in evidence were inadmissible hearsay. He objected at trial on the grounds that the tape contained statements from the interrogating officer, Detective Steve Sumner, regarding Lampkins' guilt. During the course of an interview with Lampkins, Detective Sumner can be heard to declare, "Well, something's not right here ... Something stinks. Something stinks bad.... You need to be telling us the truth." Detective Sumner also stated, "Something stinks. So basically all we've got is your word that Boogie shot this guy. Is that what you're telling us," and "I think you was looking out for Boogie." These statements are problematic under Indiana Evidence Rule 704(b), which provides that witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions. Because the tape was admitted for all purposes, including the truth of the matter stated,

the detective's statements were also hearsay.

Relying on *Strong v. State*, 538 N.E.2d 924 (Ind.1989), the State contends that Detective Sumner's comments were only intended to elicit a response from Lampkins and, as such, were not hearsay. In *Strong*, this Court held that an audiotape of the defendant's statements to police was admissible, including the interviewing officer's statement, "I want to caution you on one thing. Physical evidence proof, .stuff that Lt. Loy saw and found at your house on that night ... Doesn't match stuff that you tell us...." *Id.* at 928. This Court found the statement to be admissible for two reasons. First, the statement was not hearsay as it was not offered to prove the truth of the facts asserted. Second, the trial court thoroughly explained in an admonishment to the jury that they were to consider the statement to be a method of questioning intended to elicit information from the defendant and not as evidence of her guilt.

In *Smith v. State*, 721 N.E.2d 213 (Ind. 1999), we found an interrogating officer's statements to the defendant during an interrogation inadmissible because, unlike *Strong*, the trial court gave no such limiting instruction or admonishment. As we held in *Smith*, although a trial court has no affirmative duty to consider giving an admonishment in the absence of a party's request, it is error to admit statements by an interrogating officer without any limiting instruction or admonishment. *Id.* at 216.

■ Although the jury should have been advised that the detective's statements were not evidence, we conclude that the admission of the detective's statements in this case was harmless. In a subsequent interview with police, Lampkins confessed to having shot Jones twice in the back. He so testified at trial. Harris and Christopher Lampkins supported this admission in their testimony at trial. Harris also testified that, upon returning to Muncie, Larry Lampkins had admitted to at least one other person that he shot Jones. We conclude that in light of this evidence, the admission of the detective's statements did not affect the substantial rights of the defendant.

### B. *Statement Made by an Unidentified Person at the Scene*

■ At trial, Joe Moore, one of the witnesses present at the shooting, testified that immediately after Jones was shot, he heard someone say, "You fuckin' with some real soldiers." Before trial, in statements to the police, Moore had attributed the statement to Harris. At trial, however, he testified that he could not identify who made the statement. The defense argues that the statement was intended by the State to "inflame the prejudice and passions of the jury." The statement was not hearsay because it was not offered to prove the truth of the matter asserted and was therefore not inadmissible on that ground. It was at least marginally relevant because it bore on Lampkins' defense that he was in fear of injury by a hostile Anderson crowd and supported the State's theory that Lampkins approached Jones from behind and shot him in the back without fear of the crowd. The statement's prejudicial effect is equally nebulous. We conclude that the probative value of the statement is not substantially outweighed by its unfair prejudice.

### III. Refusal of Instruction on Self–Defense

Lampkins asserts that the trial court erred by refusing to read to the jury Lampkins' tendered instruction, or any in-

struction at all, on self-defense.[4] Lampkins, his cousins and friend, all from Muncie, were at a nightclub in Anderson on February 26. Lampkins contends that he was defending himself from the crowd, not from Jones. There was testimony suggesting hostility between the Anderson and Muncie groups. Lampkins argued at trial that he was afraid for his life when he shot Jones. A crowd had gathered around Harris and Jones, and Lampkins testified that he had been stared at, bumped into and shoved around over the course of the night by Anderson residents. For this reason, he said he was afraid that he was in danger when Harris was fighting Jones. He argues that this was sufficient evidence to warrant a self-defense instruction.

■ In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Mayes v. State*, 744 N.E.2d 390, 394 (Ind.2001).

■ Lampkins' tendered instruction on self-defense correctly stated the law and the substance of the instruction was not covered by others. The only issue is whether Lampkins presented evidence that he acted in self-defense. To establish a claim of self-defense, a defendant must show that: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000). A

claim of self-defense cannot be supported, however, when the evidence clearly indicates that the defendant knowingly and intentionally shot his victim in the back and that the victim did nothing to provoke the attack. *Smith v. State*, 470 N.E.2d 1316, 1319 (Ind.1984). Such is the case here. Lampkins and Jones were not arguing prior to the shooting. The two had not even spoken to one another. Further, there is no evidence indicating that Jones himself was armed or had threatened Lampkins in any way. Nor was shooting Jones justified by Lampkins' fear of the crowd. Accordingly, there was no abuse of discretion when the trial court refused to give Lampkins' tendered instruction on self-defense.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ. concur.

---

4. The judge did allow Lampkins to read the tendered instruction during his closing statement so long as he did not read aloud any citation to case law but read the quote as though it were his own. In his closing argument, Lampkins did read verbatim the instruction he had proposed to the court and described that quote as his own comments and thoughts, not an instruction.