## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 12 2018, 5:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

APPELLANT PRO SE

Thomas A. DeCola
North Judson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian A. T. McLean
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Thomas A. DeCola,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 12, 2018

Court of Appeals Case No.
64A03-1711-CR-2556

Appeal from the Porter Superior Court

The Honorable David L. Chidester, Judge

Trial Court Cause No.
64D04-1701-CM-15

**Tavitas, Judge.**

# Case Summary

[1] Thomas A. DeCola, pro se, appeals his conviction for carrying a handgun without a license, a Class A misdemeanor. We affirm.

# Issues

[2] The four issues before us are as follows:

I. Whether the trial court erred in admitting evidence of a handgun obtained by the police during a search of DeCola's vehicle.

II. Whether the trial court erred in refusing DeCola's proposed jury instructions.

III. Whether the evidence is sufficient to sustain DeCola's conviction for carrying a handgun without a license, a Class A misdemeanor.

IV. Whether the trial court erred in denying DeCola's motion to correct error.

# Facts

[3] At approximately 12:35 A.M. on January 2, 2017, uniformed Officers Adam Jaskowiak and Michael E. Vocke of the Kouts Police Department were on routine patrol in their marked squad car when they observed a Chevrolet pickup truck with an unilluminated license plate and a defective brakelight. The officers initiated a traffic stop "on State Road 49," on a stretch of the public

roadway located approximately fifty to seventy-five feet from the Moser Auto establishment. Supp. Tr. p. 59.

[4] Officer Jaskowiak approached the vehicle on the driver's side and began to speak with the driver, DeCola. Officer Vocke approached on the passenger side, shined his flashlight into the passenger compartment, and determined that DeCola was the lone occupant. Officer Vocke then observed the butt of a handgun sticking out from beneath a disposable plate on the center seat. Officer Vocke discreetly alerted Officer Jaskowiak to the presence of the handgun. Officer Jaskowiak then asked DeCola whether he had a handgun; DeCola denied that he had a handgun. When Officer Jaskowiak asked the question a second time, DeCola replied that he was "not entirely sure." *Id*. at 61.

[5] Officer Vocke remained beside DeCola's truck, while Officer Jaskowiak returned to the squad car to check DeCola's license, registration, and warrant status. The records search revealed an outstanding Lake County warrant and "that [DeCola] had a revoked firearms status." *Id*. at 61-62. Officer Jaskowiak placed DeCola under arrest, impounded his pickup, and seized his loaded handgun, which had one round in the chamber.

On January 3, 2017, the State charged DeCola with carrying a handgun without a license, a Class A misdemeanor. On April 20, 2017, DeCola filed a motion to dismiss alleging that: (1) Indiana's gun permitting procedure is "unconstitutional" and "an infringement upon [his] right to keep and bear

arms"; (2) he had consent of the owner of Moser Auto to carry his handgun at the arrest site; and (3) Officers Jaskowiak and Vocke violated his Fourth Amendment rights by "searching [his] vehicle with a flashlight and seizing [his] pistol without reasonable cause." App. Vol. II pp. 33. The trial court denied DeCola's motion to dismiss.

[6] On September 29, 2017, DeCola filed the following proposed jury instructions, which were refused by the trial court:

> Jury must know their rights in determining the law as provided by the Indiana Constitution Article 1 section 19.

> Jury must fully understand the supreme law of land [sic], specifically article 6 paragraph 2.

> Jury must understand defendant [sic] 2nd Amendment of the supreme law of land [sic] Bill of Rights, the right to keep and bear arms.

> Jury must understand Article 1 Section 32 of Indiana Constitution, the right to keep and bear arms.

> Jury must understand Amendment 4 of the supreme law of land [sic] Bill of Rights, to be secure from unreasonable searches and seizures.

*Id*. at 46.

[7] On October 9, 2017, DeCola was tried to a jury. In the State's case-in-chief, Officers Jaskowiak and Vocke testified to the foregoing facts. Also, in-house

counsel for the Indiana State Police, Lieutenant Peter B. Wood, testified that he "administer[s] the firearms permitting process" and serves as the business records custodian for state-issued gun permits. Supp. Tr. p. 89. Lieutenant Wood further testified that the State issued a handgun permit to DeCola in 2008; and that

> [DeCola's] license was suspended in 2015 and as part of that suspension he was afforded the opportunity for [an] administrative hearing in Indianapolis and that resulted in the eventual revocation of his license. [1]

*Id.* at 93.

[8] DeCola represented himself at trial. At the outset, he requested permission to read the Second and Fourth Amendments to the United States Constitution and Article 1, Section 32 of the Indiana Constitution to the jury. The trial court

---

[1] In his cross-examination of Lieutenant Wood, DeCola opened the door to questions regarding the reason for the revocation of his handgun license. The trial judge cautioned,

> I don't want this case to be judged on character . . . but on the facts of what happened that night. If you ask that question you're opening up the door to go into that. It may not be productive for you. Do you want to ask, are you sure you want to ask that question?

Supp. Tr. p. 100. DeCola replied that he wanted to continue his line of questioning. Lieutenant Wood then testified that an administrative law judge had "found that [DeCola] w[as] not a proper person to retain [a gun] license" because DeCola "had made some Facebook posts that voices in his head were telling him to shoot people and that he was going to drive from Oregon to Fort Lee, Virginia and attack the soldiers . . . ." *Id.* at 101, 102-103.

The trial court subsequently found that DeCola "truly d[id] not understand . . . the concept [of] the door [being] opened" and refused to admit DeCola's Facebook posts into evidence pursuant to Indiana Evidence Rule 403. *Id.* at 104.

refused DeCola's request. In his ensuing testimony, DeCola described the circumstances of his arrest as follows:

> Everything that [the officers] testified here happened. Vocke came around shining the light into my truck. I thought that was a violation of my 4th Amendment right [against] unreasonable search and seizure because the officer who pulled me over for the parking light, you know, could have dealt with me with the parking light. He, it [sic] was baseless. There was no reasonable suspicion to go around the truck, to have two officers go around the truck. That was unreasonable. So, it violated my 4th Amendment [r]ight. Also, I had, you know, I had the pistol in my truck. I have a right to have a pistol. I'm a law-abiding citizen. I'm not a felon.
>
> \* \* \* \* \*
>
> The 2nd Amendment is a very important [sic]. It is a God-Given right based off the Declaration of Independence. It says our Inalienable rights come from man. And I understand that our rights can be taken away from us if, if we're felons, and for domestic entities or if you're a trouble-maker that is regarded as a felon. I can understand taking rights away. But I'm not a felon. This is politics. My license was taken away because of politics[.]

*Id.* at 110-111.

[9]     DeCola testified further that he had driven from his house to Wal-Mart and back to his house, and that he had the right to transport a handgun. He admitted that he transported the handgun when it was loaded and unsecured, and that he had attempted to "secure" the handgun by covering it with the disposable plate. DeCola also testified that he was on property owned by

Moser Auto when he was pulled over by the police. DeCola maintained that Andy Moser—owner of Moser Auto—had given him permission to carry the handgun on the arrest site.

[10]     DeCola then moved to admit a letter from Moser. DeCola maintained that (1) Moser owned the arrest site; (2) DeCola had Moser's permission to carry the handgun at the arrest site; and (3) DeCola was, therefore, not required to carry a gun license when the police officers stopped him. DeCola did not call Moser as a witness to testify about the permission letter. The trial court refused to admit the letter on hearsay grounds. The State presented rebuttal evidence that the officers stopped DeCola on State Road 49, a public roadway, on a stretch located "[a]pproximately fifty to seventy-five yards" from Moser Auto. *Id*. at 124.

[11]     After the parties rested, the jury deliberated and found DeCola guilty. That same day, with DeCola's consent to proceed to sentencing, the trial court sentenced him to 365 days in jail and ordered 355 days suspended to probation.

[12]     On October 25, 2017, DeCola filed a motion to correct error and requested a new trial based upon "new material evidence in the form of a permission letter" from Hamstra Builders, Inc., which DeCola now alleged owned the arrest site. App. Vol. II p. 91. DeCola asserted that the notarized letter of Bruce R. Przybylski, Hamstra Builders, Inc.'s vice president of operations, "meets the

[handgun permit] exception requirements of Indiana Code 35-47-2-1(c)(2)(A)."[2] The trial court denied DeCola's motion to correct error. He now appeals.

# Analysis

As an initial matter, we note that DeCola proceeded pro se. It is well-settled that pro se litigants are held to the same legal standards as licensed attorneys. *Lowrance v. State,* 64 N.E.3d 935, 938 (Ind. Ct. App. 2016). Accordingly, pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Id.* We will not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.*

## I. *Admission of Evidence*

DeCola argues that his handgun was seized pursuant to an illegal search. Specifically, DeCola argues that Officer Vocke's act of shining a flashlight into DeCola's vehicle constituted an unreasonable search. "The trial court has discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." *Lewis v. State,* 34 N.E.3d 240, 247 (Ind. 2015). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances. *Nicholson v. State,* 963 N.E.2d 1096, 1099 (Ind. 2012).

---

[2] The Hamstra Group's January 2, 2017 letter, signed by Przybylski in his official capacity states, "Tom DeCola has the permission of Hamstra Builders Inc. to carry (1) Handgun on the property located in Kouts, IN **(only on the date of January 2, 2017)**. Any other date is <u>not</u> permitted." App. Vol. II p. 96 (emphasis in original).

[15] "The Fourth Amendment provides protection against unreasonable searches and seizures by generally prohibiting such acts without a warrant supported by probable cause." *Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014) (citing U.S. Const. amend. IV; *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)). A law enforcement officer must have reasonable suspicion of criminal conduct in order to justify a traffic stop, which is a "seizure" for purposes of the Fourth Amendment. *Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind. 2007) (internal quotations omitted). *See also Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013) ("[A] traffic stop . . . is permissible where an officer has at least reasonable suspicion that a traffic law, or other law, has been violated."), *reh'g denied*. "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013).

[16] Moreover, it is well-settled that a search involves an exploratory investigation, prying into hidden places, or a looking for or seeking out. *Lewis v. State,* 949 N.E.2d 1243, 1246 (Ind. 2011). Merely observing that which is in plain view is not considered a search. *Avant v. State,* 528 N.E.2d 74, 76 (Ind. 1988). Nor does use of a flashlight transform an officer's observations into an unreasonable search. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*.

[17] The record here does not support DeCola's claim of an illegal search. Officers Jaskowiak and Vocke initiated a lawful traffic stop—prompted by DeCola's unilluminated license plate and defective brakelight. Officer Vocke shined his flashlight into DeCola's pickup truck and saw the butt of a handgun in plain

view on the center seat. There is no evidence that either officer asked DeCola to move items around or to open vehicle compartments in order to search for contraband. Officer Vocke's observation of the handgun was not an illegal search and did not run afoul of the Fourth Amendment. The trial court, thus, did not abuse its discretion in admitting the handgun into evidence.

## II.    *Sufficiency of the Evidence*

[18]    Next, DeCola argues that the State failed to prove beyond a reasonable doubt that he committed carrying a handgun without a license, a Class A misdemeanor, because he allegedly obtained Moser's permission to carry his handgun on the arrest premises. Appellant's Br. p. 7.

[19]    "'In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses.'" *K.W. v. State,* 984 N.E.2d 610, 612 (Ind. 2013) (quoting *Treadway v. State,* 924 N.E.2d 621, 639 (Ind. 2010)). We look to the evidence and reasonable inferences drawn therefrom that support the judgment, and we will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* We will reverse if there is no evidence or reasonable inference to support any one of the necessary elements of the offense. *Id.* We must thus determine whether substantial evidence of probative value was presented at trial from which a reasonable factfinder could conclude beyond a reasonable doubt that DeCola committed carrying a handgun without a license, a Class A misdemeanor.

[20] To convict DeCola, the State was required to prove that DeCola (1) carried a handgun (2) in his vehicle or on his person and (3) without a handgun license. Ind. Code § 35-47-2-1. In his defense, DeCola relies upon the following exception to the license requirement:

> A person may carry a handgun without being licensed . . . if . . . the person carries the handgun on or about the person's body while lawfully present in or on property that is owned, leased, rented, or otherwise legally controlled by another person, if the person . . . has the consent of the owner . . . or person who legally controls the property to have the handgun on the premises[.]

I.C. § 35-47-2-1(b)(2)(A).

[21] At trial, the State presented evidence that DeCola's handgun permit status was revoked at the time Officers Jaskowiak and Vocke pulled DeCola over and observed a loaded handgun in plain view on the seat of DeCola's pickup. DeCola sought to introduce a permission letter from Moser who, according to DeCola, owned the site of DeCola's arrest. The trial court refused to admit DeCola's letter due to the court's finding that the letter was inadmissible hearsay. The State presented rebuttal evidence that the arrest site was located fifty to seventy-five yards from Moser Auto on State Road 49, a public roadway regulated and legally controlled by the State. DeCola, thus, failed to prove that the exception found in Indiana Code Section 35-47-2-1(b)(2)(A) is applicable.

[22] In light of the foregoing, the State presented substantial evidence of probative value from which a reasonable jury could find, beyond a reasonable doubt, that

DeCola was guilty of carrying a handgun without a license, a Class A misdemeanor.

### III.    *Proposed Instructions*

DeCola also argues that the trial court erred in refusing his proposed jury instructions.  Specifically, he argues that "[t]he jury did not receive any written instructions" on the Second and Fourth Amendments or on Article 1, Section 32 of the Indiana Constitution.  Appellant's Br. p. 8.

The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading it and to enable the jury to comprehend the case clearly in order to arrive at a just, fair, and correct verdict.  *Overstreet v. State,* 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied,* 540 U.S. 1150, 124 S. Ct. 1145 (2004).  The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for an abuse of discretion.  *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003).

In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider the following:  (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given.  *Lampkins v. State*, 778 N.E.2d 1248, 1253 (Ind. 2002).  A trial court may properly refuse misleading and confusing instructions tendered by a party.  *Ray v. State,* 838 N.E.2d 480 (Ind. Ct. App. 2005).

At issue here is whether, given the evidence presented at trial, the trial court should have given DeCola's proposed instructions. DeCola's proposed instructions consisted entirely of broad statements. One such tendered jury instruction read: "Jury must understand Article 1 Section 32 of Indiana Constitution, the right to keep and bear arms; and [j]ury must understand Amendment 4 of the supreme law of land Bill of Rights, to be secure from unreasonable searches and seizures." App. Vol. II p. 46.

As the State argues, DeCola did not present actual instruction text, but merely "identified general subjects for the trial court to discuss with the jury." Appellee's Br. p. 12. *See Mullins v. Bunch,* 425 N.E.2d 164, 165 (Ind. 1981) (affirming trial court's refusal to give a jury instruction, comprised of a verbatim recitation of a statute, which the trial court deemed overbroad, confusing, and misleading) (*abrogated on other grounds by Mitchell v. State,* 535 N.E.2d 498, 501 (Ind. 1989)); *see Anderson v. Pre-Fab Transit Co., Inc.,* 409 N.E.2d 1157, 1166 (Ind. Ct. App. 1980) (holding that "an instruction composed of the complete text of [a statute] was 'overinclusive' and 'confusing' in view of the evidence").

At the crux of DeCola's defense is his contention that Indiana's gun permitting procedure is "unconstitutional" and "an obvious infringement upon [his] constitutional rights." Appellant's Br. p. 8. The trial court stated its rationale for refusing DeCola's proposed instructions as follows:

> . . . I did not give it because I found an Indiana case that did not
> support the giving of it. And I did my research before the trial
> started and that's . . . L[ew]is versus State, [484 N.E.2d 77], in

which it said the instruction that you were proposing was not a valid instruction.

Supp. Tr. p. 43. The trial court apprised DeCola of his right to include Second Amendment arguments in his closing statement to the jury, stating:

> You can do that if you choose. But during the trial I have to tell them that they must follow the law, and right now the law is under this case that there's a permitting procedure in Indiana and a Second Amendment does not trump the permitting procedure[.]

*Id*. at 44.

[29]     In *Lewis v. State,* 484 N.E.2d 77, 79 (Ind. Ct. App. 1985), the case relied upon by the trial court, a panel of this court reasoned as follows:

> Lewis's argument is based on his contention that [the statute at issue], which places on the defendant the burden to prove he has a [gun] license or is exempt from the statute, is unconstitutional. [The statute] violates Article 1 § 32 of the Indiana Constitution, he claims, because the statute infringes on the right to keep and bear arms.
>
> The statute Lewis assails represents a statement of legislative policy. This Court must uphold such policy unless we find it to be unconstitutional. Every statute is presumed to be constitutional and such a presumption continues until clearly overcome by a showing to the contrary.
>
> In light of this standard, Lewis's challenge to the instructions and the statute is unavailing. First, we note that [*Matthews v. State]* (1958), 237 Ind. 677, 148 N.E.2d 334, established that the

scheme of regulating handguns is constitutional. [*Matthews*] involved, as does this appeal, an Article 1 § 32 challenge to handgun legislation. In [*Matthews*], the Indiana Supreme Court held that the right to bear arms is not absolute:

> "The Legislature has the power, in the interest of public safety and welfare, to provide reasonable regulations for the use of firearms which may be readily concealed, such as pistols."

*Lewis,* 484 N.E.2d at 79 (internal citations and footnote omitted).

[30] In light of the foregoing, we cannot find that the trial court abused its discretion in refusing DeCola's proposed instructions that are invalid and unsupported by law. *See Lampkins*, 778 N.E.2d at 1253; *see Ray*, 838 N.E.2d 480.

### IV. *Denial of Motion to Correct Error*

[31] Lastly, DeCola argues that the trial court erred in denying his motion to correct error, wherein he requested a new trial on the basis of newly-discovered evidence. Pursuant to Indiana Criminal Rule 16(A), the defendant must file a motion to correct error to address "newly discovered material evidence, including alleged jury misconduct, capable of production within thirty (30) days of sentencing which, with reasonable diligence, could not have been discovered and produced at trial." A new trial based on the discovery of new evidence is warranted only if defendant can show that:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence

is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Taylor v. State,* 840 N.E.2d 324, 329-30 (Ind. 2006) (citing *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000)).

[32] On appeal, the denial of a petition predicated on newly-discovered evidence is considered a discretionary ruling and is reviewed deferentially. *Dickens v. State,* 997 N.E.2d 56, 61 (Ind. Ct. App. 2013) (citing *Fox v. State,* 568 N.E.2d 1006, 1007 (Ind. 1991)). "Accordingly, we analyze the nine factors 'with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Dickens*, 997 N.E.2d at 61 (quoting *Carter,* 738 N.E.2d at 671) (quotations omitted).

[33] Regarding the ninth factor, the defendant must raise a strong presumption that the result at any subsequent trial, in all probability, would be different. *Bunch v. State,* 964 N.E.2d 274, 296 (Ind. Ct. App. 2012). "A sufficient probability of a different result upon retrial is present where the omitted evidence creates a reasonable doubt that did not otherwise exist." *Fox,* 568 N.E.2d at 1008. In ruling on whether a piece of evidence would produce a different result, the trial court "may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstance shown at the original trial of the case." *Reed v. State,* 702 N.E.2d 685, 691 (Ind. 1998) (quoting *Fox,* 568 N.E.2d at 1007). Ultimately, the decision of whether to grant a new trial on the basis of newly-discovered evidence is within the sound discretion of the trial court, and

we will reverse only upon a showing that the court abused its discretion. *Reed*, 702 N.E.2d at 691.

[34] There is no basis here for concluding that the trial court abused its discretion in denying DeCola's motion to correct error. DeCola's "new evidence"—a new permission letter from Hamstra Builders—is no more worthy of credit than Moser's letter. Nor is it probable that the introduction of the letter would produce a different result. The new permission letter states, "Tom DeCola has the permission of Hamstra Builders Inc. to carry (1) Handgun on the property located in Kouts, IN (**only on the date of January 2, 2017**). Any other date is not permitted." App. Vol. II p. 96 (emphasis in original). As the State compellingly argues:

> The purported letter from Przybyslki is dated and notarized on January 2, 2017, the date of the offense. DeCola's motion, however, asserted that he obtained the letter on October 13, 2017, after he was released from the executed portion of his sentence; if so, then either the letter's date and notarization are fictitious, or the letter and/or Przybylski's ability to provide the information were known and available to DeCola from the date of his arrest. The same facts justify a finding that the evidence is not worthy of credit, particularly since DeCola had already testified under oath that he was stopped on another business's property, and his provision of a new letter authorizing his possession of a handgun on a different property "(**only on the date of January 2, 2017**)," is inconsistent with his own sworn testimony . . . ."

Appellee's Br. p. 17. Nor is it probable that the "new evidence" would produce a different result where DeCola maintains that he was on private property at the time of his arrest, but the officers testified that he was on a public roadway.

After considering the above-stated nine factors, we find that the trial court reasonably concluded here that DeCola failed to produce new evidence that was credible, that could be used effectively at a subsequent trial, and that would probably produce a different result. *See O'Connor,* 529 N.E.2d at 333. The trial court did not abuse its discretion in denying DeCola a new trial.

## Conclusion

The trial court did not abuse its discretion in (1) admitting the handgun into evidence, (2) refusing DeCola's proposed jury instructions, or (3) denying his motion to correct error. Sufficient evidence supports DeCola's conviction. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.